## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## JASPER DIVISION

| | | |
|---|---|---|
| Alex Hand and Emily Drummond-Hand, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | 6:19-cv-00453-LSC |
| Allstate Insurance Company, | ) ) ) | |
| Defendant. | ) ) | |

## <u>MEMORANDUM OF OPINION AND ORDER</u>

Allstate Insurance Company's motion for partial summary judgment is before the Court. (Doc. 44.) After careful consideration of the briefs and cited authority, and for the reasons explained below, Allstate's motion is due to be granted in part and denied in part.

### I

### A

In the morning hours of June 30, 2017, a tree fell on a large Victorian-Era home owned by Alex Hand and his wife, Emily Drummond-Hand. The tree landed on the Hands' front porch, damaging their porch, their roof, and their home's foundation. (Doc. 46-18 at 10–11.) The Hands filed a property-damage claim with

their insurer, Allstate Insurance Company, and Allstate promptly opened an investigation. (Doc. 46-1 at 2.)

Allstate designated Mark Burchfield as the adjustor responsible for handling the claim. (Doc. 46-4 at 38–39.) Burchfield first inspected the Hands' home on July 11, 2017, less than two weeks after their claim was reported. (*Id.* at 40–41.) And two days after Burchfield's inspection, Allstate sent engineer Justin Grammar to evaluate the degree of structural damage caused by the tree's impact. (Doc. 46-5 at 4.) Although Grammar observed damage to the home's front porch and roof, he found no evidence "indicat[ing] the structure of the residence had been permanently displaced as a result of the strike." (*Id.* at 5.)[1]

Displeased with Grammar's assessment, the Hands requested a second opinion from a second engineer. Allstate approved their request. So on July 19, 2017, a second engineer inspected the Hands' home and evaluated the degree of structural damage caused by the fallen tree. (Doc. 46-6.) Like the engineer before him, this second engineer observed damage to the home's front porch but believed the "overall structure" remained "stable." (*Id.* at 5.) The Hands' home, in other words, was damaged but not damaged beyond repair.

---

[1]    The Court gleans all these facts from the parties' submissions of facts claimed to be undisputed, the parties' responses to those submissions, and the Court's independent examination of the record. These are the "facts" for summary judgment purposes only. *See Cox v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1386, 1400 (11th Cir. 1994). Their inclusion in this memorandum of opinion does not signal their veracity.

Burchfield reviewed the two engineering reports, re-inspected the interior and exterior of the Hands' home, and estimated the total repair costs to be $51,456.84. (Docs. 46-1; 46-4 at 71–73.) He then issued the Hands a check for $46,142.05, which was the appraised amount adjusted for depreciation. (Doc. 46-8.)

Burchfield then re-inspected the Hands' home approximately five weeks later. (Doc. 46-4 at 103–05.) Following this third inspection, he revised his initial estimate and found the true measure of damages to be $79,594.38, or $28,137.54 more than his earlier estimation. (Doc. 46-9 at 23.) Adjusted for depreciation, Allstate owed the Hands $24,966.72 as of September 7, 2021.

## B

Allstate then approved the Hands' request for two more engineers to inspect their home. (Docs. 46-12; 46-16.) These engineers generally agreed with the first two assessments. Both observed signs of damage to the Hands' home, especially to the front porch, but neither found evidence of irreparable harm to the home's foundation.

The Hands disagreed with (and disputed) all four engineering assessments; for months they continued to argue the structural damage to their home was "beyond repair"—that their home needed to be torn down and completely rebuilt, all at a cost of some $878,618.98.[2] Although Allstate refused requests to tear down and rebuild

---

[2]     The Hands later abandoned this tear-down-and-rebuild position. (Doc. 46-14 at 62–63.)

the Hands' home, it to date has paid more than $300,000 towards their claim. This includes over $107,000 in "Additional Living Expenses" in the form of power bills, lawncare bills, and monthly installments of $4,500 paid to Emily Drummond-Hand's mother for rent on a three-bedroom, two-bathroom house in Jasper, Alabama.[3] Allstate has also paid $52,755.49 for water damage to the Hands' oriental rugs, $52,261.20 for damages to "custom drapery," and more than $70,000 for home repairs.

## C

On February 11, 2019, the Hands sued Allstate in the Circuit Court of Walker County, Alabama. Their complaint accuses Allstate of breaching the terms of their property-insurance policy and of acting in bad faith. Allstate removed to federal court on March 15, 2019. And now, after more than two years of discovery and motion practice, Allstate has moved for a partial summary judgment. Allstate's motion seeks dismissal of the Hands' bad-faith claim while acknowledging their breach-of-contract claim presents questions "of fact for the jury to decide." (Doc. 45 at 12.)

---

[3]     Ms. Hand testified that $4,500 per month is "fair market value" for a three-bedroom, two-bathroom rental house in Jasper. (Doc. 46-14 at 58–61.)

## II

A successful summary judgment motion shows there is no genuine dispute as to any material fact and that the plaintiff deserves judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists, and summary judgment is not appropriate, if "the nonmoving party has produced evidence such that a reasonable factfinder could return a verdict in its favor." *Greenberg v. BellSouth Tellecomms., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (quoting *Waddell v. Valley Forge Dental Assocs.*, 276 F.3d 1275, 1279 (11th Cir. 2001)). At summary judgment, district courts view all evidence and draw all justifiable inferences in the nonmoving party's favor. *Hoffman v. Allied Corp.*, 912 F.2d 1379, 1383 (11th Cir. 1990). Then we determine "whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be . . . resolved in favor of either party." *Anderson v. Liberty Lobby*, 477 U.S. 242, 250–51 (1986).

## III

This Court's authority to hear this case arises under the diversity jurisdiction statute, 28 U.S.C. § 1332. And when a federal district court exercises diversity jurisdiction over a state-law cause of action, it must apply the substantive law of the forum state—here, the substantive law of Alabama. *McMahan v. Toto*, 256 F.3d 1120, 1132 (11th Cir. 2001) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)). Alabama recognizes two forms of insurance bad faith: normal bad faith and

abnormal bad faith. *White v. State Farm Fire & Cas, Co.*, 953 So. 2d 340, 347–48 (Ala. 2006).

## A

An insurance company acts with normal bad faith when it denies an insured's claim in "the absence of any reasonably legitimate or arguable reason" for doing so. *Singleton v. State Farm Fire & Cas. Co.*, 928 So. 2d 280, 283 (Ala. 2005) (citation omitted). A plaintiff claiming normal bad faith "bears a heavy burden." *LeFevre v. Westberry*, 590 So. 2d 154, 159 (Ala. 1991) (citation omitted). To survive summary judgment he or she must demonstrate "(1) the existence of an insurance contract; (2) an intentional refusal to pay [a] claim; and (3) the absence of any lawful basis for the refusal and the insurer's knowledge of that fact or the insurer's intentional failure to determine whether there is any lawful basis for its refusal." *Acceptance Ins. Co. v. Brown*, 832 So. 2d 1, 16 (Ala. 2001) (emphasis added).

A trial court must grant summary judgment and dismiss a normal-bad-faith claim if any "legally sufficient evidentiary basis" exists for a jury to find for the insurance company on the plaintiff's underlying breach-of-contract claim. *Mut. Serv. Cas. Ins. Co. v. Henderson*, 368 F.3d 1309, 1314 (11th Cir. 2004) (applying Alabama law). Stated differently, for a plaintiff's claim of normal bad faith to survive summary judgment "the underlying contract claim must be so strong that the plaintiff would be entitled to a preverdict judgment as a matter of law." *Jones v. Alfa*

*Mut. Ins. Co.*, 1 So. 3d 23, 32 (Ala. 2008) (citation omitted). The Hands advance five arguments in support of their claim for normal bad faith. The Court will address each argument in turn.

1. <u>Suspension of Alternative Living Expenses Payments</u>: The Hands argue Allstate acted in bad faith by paying only $107,833.72 towards their claim for Additional Living Expenses ("ALE")—or expenses incurred during "the time required to repair or replace the [covered property] . . . using due diligence and dispatch." (Doc. 46-2 at 38.) Even if Allstate breached the governing insurance policy by stopping ALE payments after nineteen months and nearly $108,000 in benefits, the breach is not so clear that the Hands deserve a preverdict judgment as a matter of law. After all, Allstate claims the Hands could have repaired their home within nineteen months had they used due diligence and dispatch, and the veracity of Allstate's defense is a debatable question. Because "an insurance company is entitled to debate" a debatable claim without committing the tort of bad faith, *Thomasville*, 491 So. 2d at 884, suspended ALE payments cannot in this case create a jury question on normal bad faith.

2. <u>Storage Fees</u>: The Hands' second basis for normal bad faith rests on storage fees. They argue that, "without any debatable reasons," Allstate failed "to fully cover [their] storage fees" following the tree's collapse. (Doc. 60 at 27.) Allstate disagrees with the Hands' characterization. It claims to have paid every storage invoice

submitted by the Hands. (Doc. 62 and 9.) The resulting question is a question of fact, and the presence of a question of material fact precludes a judgment as a matter of law as to the Hands' breach-of-contract claim. As the Court explained above, a plaintiff's inability to earn judgment as a matter of law on an underlying breach-of-contract claim defeats a claim for normal bad faith. *Emps. Benefit Ass'n v. Grissett*, 732 So. 2d 968, 976 (Ala. 1998). Accordingly, unpaid storage bills cannot support a claim of normal bad faith.

3. <u>Contents and Dwelling Damages</u>: The Hands next contend that Allstate acted in bad faith by (1) not "tarping" their home's roof after the tree's collapse and (2) by not paying for every personal item damaged by the resulting leaks:

> Allstate was supposed to inspect the roof, and where appropriate, tarp the roof to prevent additional damages. The roof was damaged and should have been tarped. Allstate did not tarp the roof. To compound that failure, Allstate did not direct the Plaintiffs to tarp the roof. As a result, rainwater penetrated the home and damaged the dwelling and personal property. While Allstate paid some of those items, many other covered items remain damaged and unpaid.

(Doc. 60 at 27.) Like their first two arguments, this contention does not entitle the Hands to a preverdict judgment as a matter of law as to breach of contract. After all, the Hands' policy requires the insured (and not the insurance company) to "protect the property from further loss" after a covered event takes place. (Doc. 46-2 at 24.)

4. <u>Failure to Cover Foundation and Chimney Damage</u>: The Hands next argue Allstate acted in bad faith when it refused to cover alleged damages to the Hands'

chimney and foundation. But because some of Allstate's engineers believed (and still believe) that age and weathering—and not the tree's collapse—caused the chimney and foundation damages at issue, *cf.* Doc. 46-17, Allstate had a "debatable reason" for denying the Hands' claim. As a matter of law, denying a debatable claim cannot subject Allstate to normal-bad-faith liability. *Thomasville*, 491 So. 2d at 884.

5. <u>Delayed Supplemental Payment</u>: Unlike their first four arguments, the Hands' fifth and final basis for normal bad faith is sufficient to survive summary judgment. On September 7, 2017, Burchfield revised his initial appraisal and raised the estimated repair costs from $51,457.84 to $75,594.84. But Allstate didn't issue the supplemental payment until October 18, 2019, some twenty-four months later. The Hands argue this twenty-four-month delay amounted to a "constructive denial" of their claim. And by constructively denying an undisputed claim, Allstate breached its insurance contract as a matter of law, thereby creating a question of fact on the Hands' claim of normal bad faith.

The Court agrees. The Hands filed this lawsuit in March 2019, and, at that point, the Hands likely could have earned judgment as a matter of law on their breach-of-contract claim. "The elements of a breach-of-contract claim under Alabama law are (1) a valid contract binding the parties; (2) the plaintiffs' performance under the contract; (3) the defendant's nonperformance; and (4) resulting damages." *Shaffer v. Regions Fin. Corp.*, 29 So. 3d 872, 880 (Ala. 2009).

In March 2019, the parties had entered into a valid insurance contract, the Hands had performed—had paid their premiums—but Allstate hadn't paid nearly $25,000 in undisputed claims. The two-year delay in payment likely would have amounted to a constructive denial, *see Congress Life Ins. Co. v. Barstow*, 799 So. 2d 931, 938 (Ala. 2001) (explaining how an insured can prove constructive denial "by showing that the passage of time [between claim and payment] is so great that the delay alone creates a denial"), and the constructive denial likely caused the Hands to suffer damages. Although Allstate eventually paid the supplemental costs, it waited until *after* the Hands' filed suit and *after* the parties began discovery. Whether Allstate's delayed payment reflected a "conscious intent to injure," *see Davis v. Cotton States Mut. Ins. Co. v. White*, 604 So. 2d 354, 359 (Ala. 1992), or whether it instead resulted from "mere negligence or mistake," *see Ga. Cas. & Sur. Co. v. White*, 582 So. 2d 487, 494 (Ala. 1991), is a question the Court reserves for the trier of fact.

**B**

Now to abnormal bad faith. "An insurer is liable for 'abnormal' bad faith when it intentionally or recklessly fails to conduct an adequate investigation of the facts and submit those facts to a thorough review." *Henderson*, 368 F.3d at 1315. Here, the record includes no evidence from which a reasonable jury could find abnormal bad faith. Even if Allstate breached the terms of its property-insurance policy, it sufficiently investigated the merits of the Hands' claim. Its investigatory efforts

include (1) at least three home inspections by Burchfield, (2) hiring and sending engineer Grammar to identify and measure the structural damage to the Hands' home, and (3) approving the Hands' request to have three other engineers conduct secondary inspections. These inspections were reasonably prompt and timely, most of them taking place within a few months of the Hands filing their claim. Given these efforts and given the dearth of contradictory evidence provided by the Hands, the Hands cannot show Allstate intentionally or recklessly failed to investigate their claim.

## IV

For the reasons just explained, Allstate's motion for partial summary judgment (Doc. 44) is **GRANTED IN PART and DENIED IN PART**. The Hands' claim for abnormal bad is **DISMISSED WITH PREJUDICE**. Their claim for normal bad faith remains pending.

**DONE** and **ORDERED** on July 8, 2021.

L. Scott Coogler
United States District Judge

203323